<div align="center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| DOUGLAS A. SCOTT,<br><br>         Plaintiff,<br><br>    v.<br><br>PERKINELMER HEALTH SCIENCES, INC.,<br><br>         Defendant. | Case No.  24-cv-03389-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RULE 60(b) MOTION FOR RELIEF FROM FINAL JUDGMENT**<br><br>Re: Dkt. No. 31 |

Before the Court is Plaintiff's Motion for Relief from Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b).  Dkt. 31 (the "Motion").  Pursuant to Civil Local Rule 7-1(b), the Court determines that the Motion is suitable for decision without oral argument.  Civil L.R. 7-1(b). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.     BACKGROUND

### A.     Defendant's Request for Judicial Notice

To obtain relief under Rule 60(b), the moving party must show entitlement to one of the specified grounds for relief.  Fed. R. Civ. P. 60(b).  A "district court is free to consider new evidence at its discretion" in determining whether to grant a Rule 60(b) motion. *See, e.g.*, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 n.1 (9th Cir. 2016).  Accordingly, the background herein is drawn from the record in this action, including the evidence submitted in Plaintiff's declarations and the declaration of Defendant's counsel.  Dkts. 31-1 ("Plaintiff's Initial Decl."); Dkt. 32-1 ("Bakaly Decl."); Dkts. 32-2–32-13 (attachments thereto); Dkt. 42-1 ("Plaintiff's Reply Decl.").  Defendant also requests this Court take judicial notice of certain exhibits (Exhibits H-J) to the Bakaly Decl.  As Plaintiff does not oppose this request, and under the Court **GRANTS** the request for judicial notice to the extent an exhibit is relied upon herein.

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

United States District Court
Northern District of California

### B.    Relevant Background

#### 1.    The Underlying Dispute

On March 11, 2024, Plaintiff, proceeding *pro se*, filed a complaint in the California Superior Court for the County of Monterey against Defendant PerkinElmer Health Sciences Inc. (now known as "Revvity," *see* Dkt. 32 at 6). Dkt. 1, Ex. A; Dkt. 42-1, ¶ 3. Defendant removed the case to federal court on June 5, 2024. Dkt. 1. The basic facts, as set forth by this Court previously based on Plaintiff's allegations, are that Plaintiff "operated two cannabis testing laboratories in Salinas, California" and purchased certain instruments from Defendant. Dkt. 29 at 2. Plaintiff subsequently encountered issues with the instruments and commenced this action, seeking to recover from Defendant on three counts of fraud, two implied warranty claims and a claim for rescission and restitution. *Id.*; *see also* Dkt. 32 at 5 (Defendant does not contest this basic history for the purposes of this Motion).

As Defendant points out and Plaintiff does not dispute, the orders for equipment were placed by Plaintiff on behalf of American Biotech Testing, Inc. ("ABT"), "which Plaintiff owned and ran as CEO." Dkt. 32 at 5 (Defendant's opposition); Dkt. 11-2, Exs. A-C (Sales Order Confirmations); Plaintiff's Initial Decl., ¶¶ 9-10 (declaring that "American Biotech Testing, Inc. held the contracts at issue, discovered fraud later, and continues to pursue claims in a pending RICO group action in Massachusetts."). Nonetheless, Plaintiff brought the fraud, implied warranty, and rescission claims in his own name in this case. *See* Dkt. 1, Ex. A.

#### 2.    Other Relevant History

On December 16, 2024, the Court converted Defendant's then-pending motion to dismiss into a motion for summary judgment and granted summary judgment against Plaintiff on five claims while dismissing his sixth claim without leave to amend. Dkt. 29. On December 9, 2025, the Plaintiff filed the Motion, seeking to set aside the judgment and re-open the case on three grounds: "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1); "fraud, … misrepresentation, or misconduct by an opposing party" under Rule 60(b)(3); or "any other reason that justifies relief: under Rule 60(b)(6). Dkt. 31 at 2. The gravamen of Plaintiff's motion under all three subsections of the Rule are that, in converting the motion to dismiss into a motion for

summary judgment, Plaintiff was deprived of an opportunity to be heard and oppose the motion because he "did not receive adequate notice of filings," whether by mistake or by fraud, and ultimately was denied due process. *Id.* With this background, the Court turns to Plaintiff's litigation history in this case.

### a.    Plaintiff's Initial Participation in this Litigation

Once this matter was removed, the Parties proceeded to litigate it before this Court. First, Defendant's counsel, Charles G. Bakaly IV, emailed Plaintiff to request his consent to a two-week extension of time for Defendant to respond to the complaint. Bakaly Decl., ¶ 2. Plaintiff agreed via email, and the stipulation was filed by Defendant on June 12, 2026.

On June 14, 2024, Defendant filed its consent to magistrate-judge jurisdiction. Dkt. 9. On June 18, Mr. Bakaly sent Plaintiff a copy of a blank consent form via email, which Plaintiff received. Bakaly Decl., ¶ 3. On June 20, Defendant received a copy of Plaintiff's consent form but "checked the Court's docket and noticed that [Plaintiff's] form has not been filed," and offered to file the form for him. *Id.*; Dkt. 32-2 at 5. Plaintiff explained that he was still in the process of setting up electronic filing via PACER at that time. *Id.* Plaintiff subsequently e-filed his consent form on July 1, 2024. Dkt. 18. At that time, Plaintiff's ECF/PACER account was linked to the same email he used to correspond with Defendant's counsel. *See* Dkt. 41-1 at 2 (email reflecting Clerk's Notice vacating the initial case management conference in this case was sent to, *inter alia*, Plaintiff's email address).

Meanwhile, on June 26, 2024, Defendant filed a motion to dismiss. Dkt. 11. Plaintiff's response was due July 10, but no response was filed by that date. *See* Dkts. 11, 20. On July 22, Plaintiff filed a request with the Court to extend his time to respond, explaining that he "had no knowledge that a Defendant's motion was filed," and so "missed the deadline to file a response." Dkt. 21. Defendant filed a response explaining that it had properly served Plaintiff with the motion to dismiss "via email at the same email address" as included on Plaintiff's complaint and as apparently linked to his ECF account. Dkt. 22 at 2. Nonetheless, Defendant did not oppose Plaintiff's request for additional time to file the response, provided it was allowed to file a reply. *Id.* at 3. On July 23, the Court granted the request. Dkt. 23. Plaintiff e-filed his response on

United States District Court
Northern District of California

August 8 and Defendant filed its reply on August 13, 2024.  Dkts. 24-25.

### b.      Plaintiff's Failure to File Supplemental Briefing

On October 9, 2024, the Court issued an order explaining that Defendant had submitted certain affidavits and exhibits with its motion to dismiss to introduce evidence related to its statute-of-limitations defense.  Dkt. 28 at 1.  In its discretion, the Court found it appropriate to convert the motion to dismiss into a motion for summary judgment and provide Plaintiff an opportunity to respond.  *Id.*  Plaintiff's supplemental response was due on October 30, 2024.  *Id.*

Plaintiff did not file any further response.  On December 16, 2024, the Court converted Defendant's then-pending motion to dismiss into a motion for summary judgment and granted summary judgment against Plaintiff on five claims while dismissing his sixth claim without leave to amend.  Dkt. 29.  Judgment was entered against Plaintiff on the same day.  Dkt. 30.

### c.      The Massachusetts Action

Plaintiff did not timely file an appeal.  However, on January 16, 2025, Plaintiff's company, ABT, joined in a multi-plaintiff case filed by twenty-nine companies against Defendant in Massachusetts state court – which was subsequently removed by Defendant to federal court in the District of Massachusetts.  *Assured Testing Laboratories LLC et al. v. PerkinElmer Health Sciences, Inc. et al.*, No. 25-cv-12336-BEM, Dkt. 2 at 8-121 (removed on August 21, 2025;  much of the state court docket available at Dkt. 2, Appendix to Defendant's Notice of Removal) (the "Massachusetts Action").  On April 30, 2025, Defendant "moved to dismiss many of the plaintiffs' claims" in the Massachusetts Action, including "the ABT entities' claims [as] time barred and … precluded from … by the judgment this Court had entered in" the instant action.  Bakaly Decl., ¶ 12.

### d.      The Motion to Set Aside Judgment in this Case

On December 9, 2025, Plaintiff filed the Motion to re-open this case.  Dkt. 31.  After Defendants' opposition was timely filed, Plaintiff initially did not file a reply.  In light of the fact that "the key basis for the relief sought by Plaintiff's Motion is his assertion that he did not receive fair notice or opportunity to be heard before the final judgment was entered because he had trouble using the PACER electronic filing system," the Court *sua sponte* extended Plaintiff's deadline to

United States District Court
Northern District of California

file a reply and directed both Defendant and the Clerk of Court to revert to hard-copy, mail service in addition to electronic service.  Dkt. 34 at 2.

Thereafter, Plaintiff filed a timely motion for further extension of time and ultimately filed his reply by the extended deadline.  Dkts. 36, 40, 42.  In the interim between his motion for extension of time (Dkt. 36) and his reply (Dkt. 42), Plaintiff retained counsel.  Plaintiff's reply thus polished the arguments raised in the Motion and responded to Defendant's arguments in opposition.  *Compare, generally* Dkt. 42 *with* Dkts. 31, 32.

However, the Court agrees with Defendant that the reply also raised new arguments and submitted new evidence by way of a more comprehensive declaration from Plaintiff.  *Id.* Defendant does not object to Plaintiff's reply arguments or evidence.  *See* Dkt. 43 at 1.  Rather, Defendant requests leave to file a sur-reply to respond to the new issues raised.  *Id.*  Having considered the administrative motion, which is unopposed, and in consideration of Plaintiff's formerly-*pro se* status, the Court does not strike Plaintiff's new arguments and evidence but **GRANTS** Defendant's motion for leave to submit its proposed sur-reply.  The Court accepts the sur-reply as filed at Dkt. 43-1, and Defendant need not separately file it on the docket.

## II.      LEGAL STANDARD

Rule 60(b) empowers a district court to set aside a judgment for any of the following reasons: (1) "mistake, inadvertence, surprise or excusable neglect;" (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);" (3) "fraud …. misrepresentation, or misconduct by an opposing party;" (4) "the judgment is void;" (5) "the judgment has been satisfied released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;" or (6) "any other reason that justifies relief."  Fed. R. Civ. P. 60(b); *see also School Dist. N. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). "Although couched in broad terms, subparagraph (6) requires a showing that the grounds justifying relief are extraordinary."  *Reynolds v. Lomas*, No. C 11-03218 JSW, 2012 WL 4714525, at *1 (N.D. Cal. Oct. 3, 2012), *aff'd*, 554 F. App'x 548 (9th Cir. 2014) (*citing Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1981)).

United States District Court
Northern District of California

### III.    DISCUSSION

Plaintiff's Motion originally sought to set aside the judgment and re-open the case on three grounds:  "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1);  "fraud, … misrepresentation, or misconduct by an opposing party" under Rule 60(b)(3);  or "any other reason that justifies relief: under Rule 60(b)(6).  Dkt. 31 at 2.  In his reply, however, Plaintiff does not mention and appears to concede his 60(b)(3) argument as opposed by Defendant.  *See, generally*, Dkt. 42;  Dkt. 32 at 10-11.  Thus, what remains are:  (1) Plaintiff's contention that Rule 60(b) relief is warranted by excusable neglect, (*see* Dkt. 42 at 9-11);  (2) Plaintiff's contention that extraordinary circumstances prevented him from prosecuting his case, (*see id.* at 11);  and (3) that due process required actual notice prior to conversion of a motion to dismiss into a motion for summary judgment, (*see id.* at 11-12).

Defendant opposes the Motion (1) as untimely and (2) on the merits of Plaintiff's (b)(1) and (b)(6) arguments.  Dkt. 32 at 8-12.  In its sur-reply, Defendant also argues that setting aside the judgment would be futile.  Dkt. 43-1 at 4-5.  The Court begins by addressing the timeliness of Plaintiff's Motion.

#### A.    Plaintiff's Motion is Timely

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).  Plaintiff's Motion was filed on December 9, 2025, within one year after the Court's December 16 entry of judgment.  Dkt. 31.  The one-year time limit, however, is not dispositive:  "Such a motion may be denied, although it was filed within the one year period, if the district court finds that the defendant was guilty of laches or unreasonable delay."  *Meadows v. Dominican Republic*, 817 F.2d 517, 520-21 (9th Cir. 1987).  Rather, "[w]hat constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties."  *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009).

Here, the Court credits Plaintiff's averment that, given his ECF/PACER difficulties, he did

United States District Court
Northern District of California

not learn of the judgment until March, 2025, when he "spoke with a fellow lab owner" about the Massachusetts Action and "learned of Perkin-Elmer's attorneys' use of this judgment against [him]." Plaintiff's Reply Decl., ¶¶ 5-6.[1] Plaintiff explains that, in the eight months between then and when he filed the Motion, he "sought to understand the implications of the Massachusetts filing, investigate what had occurred in this case, and prepare a Rule 60(b) motion without legal assistance." *Id.*, ¶ 6. "[He] was also dealing with cancer," having begun "cancer treatment in June 2019" and having "to undergo surgery for two different other forms of cancer in 2025." *Id.*; *see also* Dkt. 37, ¶ 8. The Court finds that it was not unreasonable for Plaintiff, working *pro se* and amidst cancer treatments, to take eight months to prepare his Motion. *See Lemoge v. United States*, 587 F.3d at 1197 (a delay of "about seven months" was "insubstantial when viewed in light of" counsel's three surgeries and "traumatic medical issues that still afflicted him as of the time of the hearing," where counsel was "a sole practitioner, [and] it would take [him] months to get back on his feet and to catch up on the status of his cases while recovering from surgery.").

**B.      Plaintiff's Neglect in Failing to File a Supplemental Brief Upon the Court's Conversion Notice Was Excusable**

Plaintiff seeks relief under Rule 60(b)(1) under the "excusable neglect" prong. Dkt. 42 at 9-11. In light of Plaintiff's declarations, the Court is persuaded that Plaintiff neglected to file a response after this Court's October 9, 2025 Order, rather than missing the deadline intentionally. *See* Dkt. Plaintiff's Initial Decl.; Plaintiff's Reply Decl., ¶¶ 3-4 ("I never received the October 9, 2024 order. Had I known of the Court's order inviting me to submit evidence, I would have included the evidence that I provide in this Declaration."). "This leaves, of course, the Rule's requirement that the party's neglect … be 'excusable.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The determination of whether neglect is excusable

---

[1] Plaintiff's Motion confusingly states that he was "informed" by the Court's Federal Pro Se Program "on August 8, 2024 [that the] case was vacated because of 'Standing." Dkt. 31 at 2. While Plaintiff may have had a conversation with the Federal Pro Se Program on August 8, a miscommunication must have occurred, as Defendant was only seeking at the time to dismiss the case on standing grounds, no decision had yet been rendered and the hearing had not yet been vacated. *See* Dkts. 11, 27. The Court had only vacated the initial case management conference at that time, pending its ruling on the motion to dismiss, (*see* Dkt. 19), which may have been what Plaintiff was informed of.

"is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* It includes at least four factors: "[(1)] the danger of prejudice to the [opposing party], [(2)] the length of the delay and its potential impact on judicial proceedings, [(3)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(4)] whether the movant acted in good faith." *Id.*

Plaintiff argues that all four factors favor him. Dkt. 42 at 9-11. Defendant does not dispute these arguments, even in its sur-reply. Dkt. 43-1. The Court agrees with Plaintiff. There is little danger of prejudice to Defendant, because Defendant—who is actively litigating similar issues in the Massachusetts Action currently—does not face a "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Coen Co., Inc. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 504 (N.D. Cal. 2015) ("To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case, as 'being forced to litigate on the merits' is not considered prejudice." (citation omitted). The length of delay will be minimal in light of the Court's decisions in subsections C.-D., *infra*. As to the third and fourth factors, the Court notes that Plaintiff's sudden cessation of activities after August, 2024 and his subsequent participation in this action only when documents were physically mailed to him, which is best explained by—for whatever reason—a loss of access to ECF/PACER. *See, supra*, §§ I.B.2.a-b., c. The Court readily concludes that Plaintiff, in light of the facts set forth above, has acted in good faith. Finally, as to whether the delay was reasonably within his control, the record is insufficient for the Court to judge one way or the other *why* Plaintiff lost ECF/PACER access, and the Court finds that factor weighs neutrally. In sum, the Court determines that Plaintiff's neglect was excusable.

However, the Court nonetheless determines that re-opening the case, other than to correct the Court's legal error, would be futile as explained in subsection C, below. Rather, for the reasons set forth in subsection D, below, the Court will **SET ASIDE** its judgment, **VACATE** its December 19, 2024 Order, **ISSUE** a new Order and Judgment and close the case.

////

////

**C.    Whether Plaintiff Qualifies for Excusable Neglect or Due Process Principles Support Relief Under Rule 60(b)(6), the Court Nonetheless Finds that Re-opening Plaintiff's Case Would be Futile**

The granting or denial of a Rule 60(b) motion "is left largely to the discretion of the District Court." *Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 146 (9th Cir. 1975) (citations omitted).  A court is not obligated to vacate a judgment if doing so would be an "empty exercise." *James v. United States*, 215 F.R.D. 590, 594 (E.D. Cal. 2002) (citing, *inter alia*, *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (holding that before granting relief from judgment, a factor to consider is whether the party has a meritorious claim or defense), *overruling on other grounds recognized by, NewGen, LLC*, 840 F.3d at 616.  Thus, "the Court will not vacate final judgment where doing so would be futile." *United States v. Burbridge*, No. 16-cv-6284-PA (MRWx), 2017 WL 10574520, at *3 (C.D. Cal. Nov. 17, 2017).

Plaintiff argues on reply that neither the lingering standing issues in this case nor the invoices provided by Defendant make re-opening the case an empty exercise. *See* Dkt. 13-18.  In particular, Plaintiff argues that, given the opportunity to respond, he would have argued that Defendant's "active[] conceal[ment]" and "ongoing assurances and support," as well as concealment by "the leasing company Revvity recommended," all prevented him from discovering the fraud and merit tolling of the limitations period. *Id.* at 13-16.  Plaintiff explains that "[h]ad I known of the Court's order inviting me to submit evidence, I would have included the evidence that I provide in this Declaration."  Plaintiff's Reply Decl., ¶ 3.

For the purposes of futility—*i.e.*, for the purpose of deciding whether Plaintiff's raising such arguments could change the outcome of the Court's judgment—the Court will assume the facts are as Plaintiff avers.  On a motion for summary judgment, "where the moving party seeks summary judgment on its own claim or defense[], the moving party must establish 'beyond controversy every essential element of its" claim or defense.'"  Dkt. 29 at 6 (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003);  *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.").

Even so, this does not save Plaintiff's claims.  As Defendant points out, Plaintiff declares

United States District Court
Northern District of California

in support of his tolling arguments:

> I did not form any suspicion that Perkin-Elmer had engaged in fraud until on or about March 2021[.] … I first consulted with an attorney regarding potential fraud claims on **March 6, 2021**. That was the first time fraud was identified as a legal theory applicable to my losses. **The statute of limitations on my claims began to run at that time** — not in 2019, as Defendant falsely asserts.

Plaintiff's Reply Decl., ¶ 23 (emphasis added). However, Plaintiff filed his claims on March 11, 2024. Dkt. 1, Ex. A. The statute of limitations for Plaintiff's fraud claims is three years. Dkt. 29 at 7-8. "Although this seems a small miss, statute of limitations deadlines are firm deadlines, and missing the deadline by a few days still results in a missed deadline[.]" *Smith v. Soto*, No. 16-cv-00697-SI, 2017 WL 1549343, at *4 (N.D. Cal. May 1, 2017); *see also McCullough v. Xerox Corp.*, No. 13-cv-04596-HSG, 2015 WL 5769620, at *8 (N.D. Cal. Oct. 2, 2015) ("The Ninth Circuit has strictly enforced this statute of limitations, upholding the dismissal of claims as untimely when filed even a few days after the deadline." (citing *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1127 (affirming order dismissing as untimely *pro se* plaintiff's claims filed three days beyond the ninety-day deadline).

Accordingly, even if the Court applied all of the discovery-rule-tolling that Plaintiff seeks, Plaintiff's claims would still be time-barred. Thus, re-opening the case would be an "empty exercise." *James v. United States*, 215 F.R.D. at 594. For this reason, whether based on excusable neglect or due process concerns, Plaintiff's request to re-open the case is **DENIED**.

### D.    Plaintiff's Request for "Acknowledgement for the Record" that the Court's Dismissal "Was Not On the Merits of the Corporate Entity's Claims"

Finally, the Court notes that Plaintiff's Motion appears motivated only in-part by his desire to pursue his own fraud claims. An equal motivation appears to be his request for clarification "that the previous dismissal was not on the merits of the corporate entity's claims," but rather that the case was vacated "based on 'Standing.'" Dkt. 31 at 3. Plaintiff seeks this relief because "dismissal for lack of standing is not a decision on the merits and therefore cannot preclude future claims by the corporate entity (American Biotech Testing Inc.) arising from the same transactions." *Id.* (emphasis omitted). In reply, Plaintiff clarifies his request as asking the Court

10

to "acknowledge for the record that the judgment does not operate as a merits adjudication binding on American Biotech Testing, Inc. in any other proceeding." Dkt. 42 at 19. The Court now addresses this request.

It is not clear under what subsection of Rule 60(b) Plaintiff requests this relief. However, "a district court should consider a Rule 60(b) motion under the subsection that most naturally applies to the motion's substance, regardless of the label used." *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1216 (9th Cir. 2024). Moreover, "'federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction,' and therefore may address issues of subject-matter jurisdiction … at any stage of the litigation." *See WNT, Inc. v. Awojuola*, No. 19CV0216 JAH (BGS), 2019 WL 3712128, at *2 (S.D. Cal. Aug. 7, 2019) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (explaining that, although a court may not *sua sponte* set aside or modify a judgment in a closed case for lack of subject matter jurisdiction, a court may do so under Rule 60(b) upon a motion by a party).

Plaintiff's initial request is based on his misunderstanding as to what occurred: the Court did **not** discuss or rule on Defendant's standing arguments but rather rendered judgment on statute-of-limitations grounds. *See* Dkt. 29 at 3 n. 4. Yet, Plaintiff's request on reply maintains that the Court should "acknowledge for the record that the judgment does not operate as a merits adjudication." Dkt. 42 at 19. In light of Plaintiff's initially *pro se* status, the Court has a duty to construe his initial motion liberally. *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020) (There is an "entrenched principle that *pro se* filings[,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers."); *see also Mahmoud v. Jeffery*, No. 3:25-cv-00040-ART, 2026 WL 473271, at *1 (D. Nev. Feb. 19, 2026) (applying liberal construction of *pro se* pleadings in the Rule 60(b) context). The Court accordingly construes the Motion, at least in the context of the reply, as arguing that the Court's judgment could not have been rendered on the merits of ABT's claim. Where a "Plaintiff timely seeks relief on the ground that the Court applied the wrong legal standard[, t]his is the kind of mistake or inadvertence that can be corrected by the Court pursuant to Rule 60(b)(1)." *See, e.g.*, *Hinrichsen v. Bank of Am.*,

11

*N.A.*, No. 17-cv-0219-DMS (RBB), 2018 WL 11649571, at *2 (S.D. Cal. Oct. 9, 2018)

Accordingly, the Court must analyze whether its December 16, 2024 Order committed legal error and, if so, whether any relief under Rule 60(b)(1) is warranted.

**1.      The Court's December 16, 2024 Order Could Not Have Dismissed Plaintiff's Claims on the Merits, Except as to His Individual Fraud Claims, Because Plaintiff Lacked Standing to Pursue Claims on Behalf of ABT**

In its prior Order, the Court did not discuss Defendant's standing arguments but rather rendered judgment on statute-of-limitations grounds.  *See* Dkt. 29 at 3 n. 4.  However, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).  "[A] dismissal on statute-of-limitations grounds is 'a judgment on the merits.'"  *Baiul-Farina v. Lemire*, 804 F. App'x 533, 538 (9th Cir. 2020) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)).   Indeed, "[w]ithout jurisdiction the court cannot proceed at all in any cause; *it may not assume jurisdiction for the purpose of deciding the merits* of the case."  *Sinochem*, 549 U.S. at 431 (2007) (internal quotation marks omitted) (emphasis added).  Accordingly, prior to turning to Defendant's statute-of-limitations defense, the Court was required to evaluate whether Plaintiff had standing to bring, and the Court had jurisdiction to hear, all of the claims asserted in this case.  Failure to do so was thus a mistake under Rule 60(b)(1).  *Kemp v. United States*, 596 U.S. 528, 535 (2022) ("[A]s currently written, 'mistake' in Rule 60(b)(1) includes legal errors made by judges.").

**2.      Correction of the Court's Error Would Not be Futile**

Although the Court's judgment included an error, the Court need not set aside the judgment or re-open the case if doing so would be futile.  *See, supra*, § III.C.  As explained in Section III.C., above, re-opening the case due to Plaintiff's excusable neglect, in order to permit Plaintiff to submit an opposition on the statute-of-limitations issue, would be futile because the Court's decision would be unchanged based on Plaintiff's Reply Declaration.  *Id.*  However, by contrast, re-opening the case and setting aside the Court's broad merits judgment would **not** be

futile, because, for the reasons set forth in **Attachment A**, the Court should have dismissed only **some** of Plaintiff's claims on the merits, while dismissing others for lack of standing.

Specifically, as set forth in **Attachment A**, the Court:

- Should have converted Defendant's motion to dismiss into a motion for summary judgment only in part;

- Should have granted in part and denied in part Defendant's motion to dismiss for lack of standing, dismissing:

    o   Plaintiff's claims for breach of implied warranties;

    o   his claim for recission;  and

    o   his fraud claim to the extent it was brough on behalf of ABT;

- Should not have dismissed Plaintiff's *personal* claim for *personal* losses due to fraud for lack of standing, but should have maintained its merits judgment on that claim as barred by the statute of limitations.

\* \* \*

Accordingly, Plaintiff's request for "acknowledg[ment] for the record that the previous dismissal was not on the merits of the corporate entity's claims," which the Court takes to be a request for relief to due mistake under Rule 60(b)(1), is **GRANTED**.  The Court proceeds to **SET ASIDE** its judgment and **RE-OPEN** the case, **VACATE** its December 19, 2024 Order and **ISSUE** a new Order (**Attachment A**) and Judgment, and close the case.

## IV.   CONCLUSION:

For the foregoing reasons, Plaintiff's motion to set aside the judgment and re-open the case pursuant to Rule 60(b) is **GRANTED IN PART AND DENIED IN PART**.  His request to re-open the case and set aside the judgment for excusable neglect or lack of due process is **DENIED**, while his request to re-open the case and set aside the judgment based on mistake of the Court is **GRANTED**.

The Court **SETS ASIDE** its judgment, **RE-OPENS** the case and **VACATES** its December 19, 2024 Order at Dkt. 29.  The Court **ISSUES** a new Order (*see* **Attachment A**) and will issue a new judgment separately, and will close the case.

13

Moreover, the Court clarifies the record as follows:

- The Court will dismiss for lack of standing Plaintiff's breach-of-warranty, rescission and fraud claims to the extent they were brought on behalf of ABT;
- The Court maintains its dismissal of Plaintiff's personal fraud claims as barred by the statute of limitations; AND
- The Court renders no judgment on the merits as to any claims ABT may hold arising from the course of events underlying this case, as ABT was not before the Court and the Court did not have jurisdiction to issue such relief.

**SO ORDERED.**

Dated: April 10, 2026

_Susan van Keulen_
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

14

# ATTACHMENT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS A. SCOTT,<br><br>                    Plaintiff,<br><br>        v.<br><br>PERKINELMER HEALTH SCIENCES,<br>INC.,<br><br>                    Defendant. | Case No.  24-cv-03389-SVK<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND CONVERTING IN PART MOTION TO DISMISS INTO MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 11 |

Defendant moves to dismiss all six of self-represented Plaintiff's claims.  *See* Dkts. 11 (the "Motion"), 24 (the "Opposition"), 25.  Plaintiff and Defendant have consented to the jurisdiction of a magistrate judge, and the Court has determined that the Motion is suitable for resolution without oral argument.  *See* Dkts. 9, 18; Civil Local Rule 7-1(b).  For the reasons set forth below, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES** three of Plaintiff's claims for lack of standing and **CONVERTS IN PART** the Motion into one for summary judgment and **GRANTS** summary judgment to Defendant the three remaining claims.[1]

## I.      BACKGROUND

### A.      Factual History

The following discussion of background facts is based on the allegations contained in the complaint.  *See* Dkt. 1, Ex. A (the "Complaint").  In 2017, Plaintiff operated two "cannabis testing" laboratories in Salinas, California.  *See id.* ¶¶ 10, 12.  In 2018, he purchased three "instruments" for the laboratories from Defendant:  (1) the QSight 220; (2) the Flexar-HPLC; and

---

[1] The Court's prior Order resolving the Motion was **VACATED** on April 10, 2026, pursuant to the Court's Order on Plaintiff's Rule 60(b) motion for relief from final judgment.  This Order replaces and corrects a legal error in the Court's prior order, while re-instating those portions of the Court's decision which were not affected by the error.

United States District Court
Northern District of California

(3) the NexION-ICP/MS. *See id.* ¶¶ 11, 86, 97, 110. In purchasing the instruments, Plaintiff relied on representations by Defendant about the instruments' functionality and capabilities. *See id.* ¶¶ 65, 86. Plaintiff subsequently encountered issues with the instruments such that they did not conform to Defendant's representations. *See id.* ¶¶ 73-75. He then commenced this action in the Superior Court for the County of Monterey on March 11, 2024, to recover from Defendant for its alleged misrepresentations in connection with its sale of the instruments.[2] *See id.* ¶¶ 76-140. Defendant later removed the action to this Court. *See* Dkt. 1.

As Defendant points out and Plaintiff does not dispute, the orders for equipment were placed by Plaintiff on behalf of American Biotech Testing, Inc. ("ABT"), "which Plaintiff owned and ran as CEO." Dkt. 32 at 5 (Defendant's opposition); Dkt. 11-2, Exs. A-C (Sales Order Confirmations); Dkt. 31-1, ¶¶ 9-10 (declaring that "American Biotech Testing, Inc. held the contracts at issue, discovered fraud later, and continues to pursue claims in a pending RICO group action in Massachusetts."). Nonetheless, Plaintiff brought the fraud, implied warranty, and rescission claims in his own name in this case. *See* Dkt. 1, Ex. A.

### B.   Relevant Procedural History

Upon initial review of the briefing, the Court observed that Defendant moved to dismiss all of Plaintiff's claims for, *inter alia*, exceeding the scope of the relevant statutes of limitations. *See* Motion at 19-28. In broaching this argument, Defendant relied on evidence outside the Complaint regarding the dates on which it delivered and installed the instruments and implicitly invited the Court to entertain converting the Motion into one for summary judgment so that the Court could properly consider that extrinsic evidence.[3] *See id.* at 19-20; Dkt. 11-3. The Court consequently

---

[2] Plaintiff also purchased a fourth instrument, the Torian T9 Portable GC (which he also refers to as "Torion"), from Defendant. *See* Complaint ¶¶ 11, 86. But he offers relatively few allegations about that specific instrument or issues he encountered with it, and so it does not appear that he bases any of his claims on the purchase of that instrument. *See id.* ¶¶ 11, 39. Defendant raises this precise issue in the Motion (*see* Motion at 12 n.3), and Plaintiff does not address it in the Opposition. The Court, therefore, understands Plaintiff's claims to concern his purchases of only the QSight 220, Flexar-HPLC and NexION-ICP/MS.

[3] The invitation is implicit in that Defendant cites to *Jablon v. Dean Witter & Company*, 614 F.2d 677 (9th Cir. 1980), for the proposition that "even if [a statute-of-limitations] defense does not appear on the face of the complaint, it can still be raised by a motion to dismiss accompanied by

2

issued an order in which it:  (1) noted that converting the Motion into one for summary judgment "may be appropriate here"; (2) offered Plaintiff an opportunity to present his own evidence about the instruments' delivery and installation dates; and (3) cautioned Plaintiff that if he did "not file any supplemental submission by the deadline, [then] the Court w[ould] construe that failure to submit as a concession regarding the accuracy of the dates."  *See* Dkt. 28 at 1-2.  Plaintiff never submitted a supplemental filing on the issue.

## II.    DISCUSSION

Plaintiff brings six claims in connection with the instruments' alleged failure to conform with Defendant's representations:

- Three claims for fraud and deceit under Section 1709 of the California Civil Code.[4]  *See* Complaint ¶¶ 76-113.
- Two claims for breaches of the implied warranties of merchantability and fitness.  *See id.* ¶¶ 114-33.
- One claim for rescission and restitution.  *See id.* ¶¶ 134-40.

Defendant argues that Plaintiff fails to state any of his claims because all of them are time barred under the applicable statutes of limitations.  *See* Motion at 19-28.  Defendant also puts forth a brief argument that Plaintiff lacks standing to bring any of the claims and that such claims must be brought, if at all, by ABT.  Dkt. 11 at 17-18.  "[A] federal court generally may not rule on the

---

affidavits."  *See* Motion at 20 (citing *Dean Witter*, 614 F.2d at 682) (quotation marks omitted). Defendant does not expressly discuss converting the Motion into one for summary judgment in the context of analyzing its statute-of-limitations defense, but a close reading of the *Dean Witter* decision clarifies that the Court could consider Defendant's evidence in connection with evaluating that defense only by converting the Motion into one for summary judgment.  *See Dean Witter*, 614 F.2d at 682; *accord McGee v. Cnty. of Riverside*, No. 21-cv-01821-JVS, 2022 WL 2168885, at *1 (C.D. Cal. Apr. 20, 2022).

[4] In the Complaint, Plaintiff refers to Section 1710 instead of Section 1709 in connection with his fraud-and-deceit claims.  Section 1709 prohibits engaging in willful deception, while Section 1710 provides four definitions of deceit "within the meaning of" Section 1709.  *See* Cal. Civ. Code §§ 1709-10.  Plaintiff cites to three of those definitions in connection with his fraud-and-deceit claims, and so the Court understands Plaintiff to actually be pursuing three claims under Section 1709, with each of the three claims corresponding to a different definition of deceit under Section 1710.  *See* Complaint ¶¶ 76-113 (citing Cal. Civ. Code §§ 1710(1)-(3)).

3

United States District Court
Northern District of California

merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). "[A] dismissal on statute-of-limitations grounds is 'a judgment on the merits.'" *Baiul-Farina v. Lemire*, 804 F. App'x 533, 538 (9th Cir. 2020) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)). Accordingly, prior to turning to Defendant's statute-of-limitations defense, the Court evaluates whether Plaintiff has standing to bring, and the Court has jurisdiction to hear, this case.

### A.    Plaintiff Lacks Standing to Bring Claims for Breach of Implied Warranties and Rescission, but May Assert Personal Claims for Fraud

The Court agrees in part with Defendant's argument that Plaintiff lacks standing. Plaintiff is not a party to the sales agreements submitted by Defendant and, accordingly, does not have standing to *personally* pursue his claims for breach of the implied warranties of merchantability and fitness. *Cf. Pulver v. Battelle Mem'l Inst.*, 536 F. App'x 730 (9th Cir. 2013) ("The district court properly dismissed the action because [the plaintiff] was not a party to the contract in his individual capacity and lacked standing to maintain the corporate plaintiff's breach of contract claim in his individual capacity following the dismissal of the corporate plaintiff."). Plaintiff similarly does not have standing to pursue rescission of the sales agreement in his personal capacity. Accordingly, Defendant's motion to dismiss Plaintiff's Fourth, Fifth and Sixth Claims for lack of standing is **GRANTED without leave to amend**.

However, fraud claims, unlike contract claims, are personal to the individual who was deceived. *See, e.g.*, *Vicentini v. Tillster, Inc.*, No. 22-cv-1148-L-JLB, 2023 WL 3573886, at *3 (S.D. Cal. May 19, 2023) ("[T]ort claims sounding in fraud are '[q]uintessential examples of personal claims.'"); *Pulver v. Avco Fin. Servs.*, 182 Cal. App. 3d 622, 640, 227 Cal. Rptr. 491, 501 (Ct. App. 1986) ("[T]he plaintiff is the person to whom the misrepresentation must have been made, and it is the plaintiff who must have relied on the misrepresentation to his damage."). Plaintiff submits that "Revvity's employees directed their representations to me personally, cultivating a relationship with me over more than a year of in-person meetings, phone calls, and conferences," and that he "suffered individual financial harm apart from American Biotech

*United States District Court*
*Northern District of California*

Testing, Inc.," incurring "liability as the personal guarantor of the leases for the instruments, unlike other shareholders." Plaintiffs' Reply Decl., ¶¶ 24-25; *see also* Dkt. 1, Ex. A, ¶¶ 30, 31, 38, 50, 51 and 53 (detailing the specific meetings). Accordingly, while Plaintiff does not have standing to pursue American Biotech Testing, Inc.'s ("ABT") claims for fraud, he does have standing to pursue his own claims for fraud. Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss for lack of standing on this ground, dismissing Plaintiff's claims only to the extent he seeks to assert ABT's claims rather than his own.

### B.     The Court Will Convert the Remainder of the Motion Into a Motion for Summary Judgment

A Rule 12(b)(1) standing challenge may be asserted either facially on the allegations or factually. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When reviewing a factual Rule 12(b)(1) challenge, the court may look beyond the complaint to matters of public record "without having to convert the motion into one for summary judgment", (*id.*), and "may consider evidence like declarations submitted by the parties," *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022), *aff'd,* 62 F.4th 1145 (9th Cir. 2023). Accordingly, the Court need not and does not convert the Motion into one for summary judgment to the extent it resolves the Motion based on Defendant's standing arguments.

This is not the case, however, for a defense based on the statute of limitations. In this context, a district court may convert a motion to dismiss for failure to state a claim into one for summary judgment where a party presents, and the district court does not exclude, "matters outside the pleadings." *See* Fed. R. Civ. P. 12(d). "[T]he most important consideration in determining whether to convert a motion to dismiss into a motion for summary judgment is whether the opposing party has had sufficient opportunity to conduct discovery and present meaningful evidence opposing the motion." *Chung v. Intellectsoft Grp. Corp.*, No. 21-cv-03074-JST, 2023 WL 5615456, at *4 (N.D. Cal. Aug. 30, 2023) (citation omitted). The decision whether to convert rests within a district court's discretion. *See Burgess v. City & Cnty. of S.F.*, No. 91-15084, 1992 WL 26545, at *2 (9th Cir. Feb. 18, 1992).

Here, for purposes of addressing Defendant's statute-of-limitations defense, conversion of

United States District Court
Northern District of California

5

the Motion into one for summary judgment is appropriate for three reasons.

*First*, the Court afforded Plaintiff a chance to present his own evidence on the question of delivery and installation dates, which is relevant to the statute-of-limitations defense. Plaintiff also could have addressed Defendant's evidence on that question in his Opposition.

*Second*, Plaintiff does not require an opportunity to conduct discovery to meaningfully address Defendant's evidence; the evidence concerned the dates on which Defendant delivered and installed the instruments at Plaintiff's laboratories, and that is information that is within Plaintiff's knowledge.

*Third*, as discussed below, consideration of Defendant's evidence may result in a case-dispositive outcome on this Motion, which counsels in favor of considering that evidence now. *See, e.g.*, *Leftridge v. Matthews*, No. 11-cv-03499-ELH, 2013 WL 5467724, at *10 (D. Md. Sept. 30, 2013) ("If my review of the Video left substantial areas of factual uncertainty, conversion under Rule 12(d) might not be warranted. But, in this case, the Video is dispositive of virtually all of the genuinely material facts. Accordingly, I will exercise my discretion to consider the Motion under a summary judgment standard.").

Accordingly, the Court will convert in part the Motion into one for summary judgment.

### C.      Resolution of the Remaining Claims Under the Summary-Judgment Standard

#### 1.      Legal Standard

A party may move for summary judgment on any claim or defense or for partial summary judgment on part of any claim or defense. *See* Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Material facts are those "that might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial,'" and where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*

United States District Court
Northern District of California

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

The moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, where the moving party would bear the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on its own claim or defense), the moving party must establish "beyond controversy every essential element of its" claim or defense. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted). If the moving party meets its burden, the burden then shifts to the non-moving party to "demonstrat[e that] the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *See id.* (citation omitted).

Where the moving party would not bear the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on the non-moving party's claim or defense), the moving party:

has both the initial burden of production and the ultimate burden of persuasion . . . . In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.

*See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the moving party meets its burden, "the nonmoving party must produce evidence to support its claim or defense [sufficient] . . . to create a genuine issue of material fact." *See id.* at 1103 (citations omitted).

In evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citation

United States District Court
Northern District of California

omitted).  But even under this favorable standard, "the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'"  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citation omitted).

### 2.    Threshold Issues

As a preliminary matter, the Court sets forth two principles relevant to its analysis of the statue-of-limitations defense.

### a.    Accrual Of Claims And The "Discovery Rule" Exception

A statute of limitations begins to run once a cause of action accrues, and, generally, a cause of action accrues "when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises."  *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (quotation marks and citation omitted).  "An important exception to the general rule of accrual is the 'discovery rule,' [also known as the 'delayed discovery rule,'] which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (citations omitted).  Put differently, the discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action."  *See id.*  A plaintiff has inquiry notice "when [she] suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."  *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988).  Of course, the discovery rule does not automatically apply in every action; to invoke the rule, a plaintiff must "show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *See Fox*, 35 Cal. 4th at 808 (citation omitted).

////

////

////

////

////

////

////

United States District Court
Northern District of California

8

### b.    COVID-Era Tolling

Because of the COVID-19 pandemic, California tolled the statutes of limitations for civil causes of action that exceed 180 days for a 178-day period between April and October 2020.  *See Marinelarena v. Allstate Northbrook Indem. Co.*, No. 22-55344, 2023 WL 3033498, at *1 n.2 (9th Cir. Apr. 21, 2023).

### 3.    Fraud-And-Deceit Claims

A three-year statute of limitations governs Plaintiff's fraud-and-deceit claims under Section 1709 of the California Civil Code.  *See* Cal. Civ. Proc. Code §§ 338(a), (d); *see, e.g.*, *Diaz v. Nationstar Mortg. LLC*, No. 23-cv-01531-DOC, 2023 WL 8896271, at *5 (C.D. Cal. Nov. 30, 2023) (applying Section 338's three-year statute of limitations to Section 1709 claim).  And under Section 338(d) of the California Code of Civil Procedure, those claims accrue "when the plaintiff suspected *or should have suspected* that an injury was caused by wrongdoing."  *See Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (1st Dist. Div. 4 2021) (citations omitted).  The injury here stems from the instruments' failure to conform to Defendant's representations, and Plaintiff alleges that the instruments failed to conform to Defendant's representations "within 2 months of the installation."  *See* Complaint ¶¶ 65, 127.  Although Plaintiff does not allege when Defendant installed the instruments, Defendant's unrebutted evidence establishes that Defendant installed the final instrument in August 2019.  *See* Dkt. 11-3 ¶ 7.

Thus, the instruments failed to conform with Defendant's representations by no later than October 2019 (two months after the final installation), and Plaintiff should have suspected wrongdoing at that time.  *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) ("A plaintiff is on inquiry notice of its fraud claims when he learns, or at least is put on notice, that a representation [is] false." (quotation marks and citation omitted)); *see, e.g.*, *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1058-59 (9th Cir. 2008) (plaintiff had inquiry notice of fraud claim once it "had a basis to question [the defendant's] representations"); *see also In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1045 (N.D. Cal. 2009) ("Sections 1709 and 1710 of the California Civil Code are codifications of common-law fraud and negligent misrepresentation." (citation omitted)).  Adding three years (the statute-of-

United States District Court
Northern District of California

limitations period) and 178 days (the COVID-era tolling period) to October 2019 (the date of accrual) results in an April 2023 deadline for Plaintiff to bring his fraud-and-deceit claims, which predates the March 11, 2024 commencement of this action.

Plaintiff argues that accrual should be delayed (presumably under the discovery-rule exception) because a variety of issues prevented him from "recogniz[ing] flaws" in the instruments until as late as January 2021. *See* Opposition at 10-11 (describing, *inter alia*, treatment Plaintiff received for cancer, time spent litigating a different lawsuit and stress and anxiety "diminishing [Plaintiff's] cognitive abilities"). Even if the Court agreed with Plaintiff and applied the discovery rule, doing so would not extend the accrual date of his fraud-and-deceit claims beyond October 2019 because, in calculating the October 2019 accrual date, the Court already applied the discovery rule. As a reminder, the discovery rule merely delays a claim's accrual until the moment when a plaintiff is on inquiry notice. Section 338(d) of the California Code of Civil Procedure does the same thing for fraud claims: it extends their accrual until a plaintiff is on inquiry notice. The Court applied that Section 338(d) standard above when it determined that Plaintiff's fraud-and-deceit claims accrued in October 2019—when he was on inquiry notice of potential misrepresentations two months after Defendant installed the instruments—and so the Court has already applied the discovery rule. *See also Nelson v. PHH Mortg. Corp.*, No. 23-15069, 2024 WL 810440, at *2 (9th Cir. Feb. 27, 2024) (discovery rule is automatically applied to fraud claims under Section 338(d)). Thus, the issues that plagued Plaintiff that he enumerates in the Opposition do not extend the accrual of his fraud-and-deceit claims beyond October 2019 under the discovery-rule exception. Rather, the Court has already applied that exception, and doing so is how the Court arrived at the October 2019 accrual date in the first place.

Plaintiff also explains that he did not "discover legal issues with [Defendant's] instruments" until he "encountered two labs that were suing [Defendant] in February and March 2021." *See* Opposition at 11; *see also* Complaint ¶ 68 (third-party laboratory "informed [Plaintiff] in March 2021, that [Defendant] committed fraud"). Again, however, the relevant question concerns inquiry notice, and Plaintiff was certainly on notice of potential misrepresentations

10

before he learned others were already suing Defendant. *See also Fox*, 35 Cal. 4th at 807 ("Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."). Indeed, once "suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *See Jolly*, 44 Cal. 3d at 1111.

The Court recognizes that "when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact" that may evade resolution at the summary-judgment stage. *See Ovando v. Cnty. of L.A.*, 159 Cal. App. 4th 42, 61 (2d Dist. Div. 3 2008) (citation omitted). But where the facts "are susceptible of only one legitimate inference, summary judgment is proper." *See Jolly*, 44 Cal. 3d at 1112 (citation omitted). Plaintiff does not dispute Defendant's evidence demonstrating that installation of the instruments occurred in August 2019 at the latest, and he affirmatively alleges that the instruments failed to conform to Defendant's representations two months later (October 2019). The "only one legitimate inference" that the Court can reach from these facts is that, by October 2019, Plaintiff should have suspected that Defendant presented him false representations. *See Hamilton*, 494 F.3d at 1207 ("All that is relevant is that a reasonable person . . . would have been on notice of a potential misrepresentation. This is the date that the complaining party learns, or at least is put on notice, that a representation is false." (citation omitted)). His fraud-and-deceit claims, therefore, accrued at that time, and the statute-of-limitations period subsequently lapsed in April 2023 before he commenced this action.

Accordingly, Plaintiff's fraud-and-deceit claims are time barred.

## III. CONCLUSION

For the foregoing reasons, the Court resolves the Motion as follows:

- The Court **GRANTS IN PART** the Motion and **CONVERTS IN PART** the Motion into one for summary judgment;

////

////

////

11

- The Court **GRANTS IN PART** and **DENIES IN PART** the Motion for lack of standing: Plaintiff's claims for breach of implied warranties and for rescission are dismissed, as well as his claims for ABT's losses due to fraud, while his *personal* claims for *personal* losses due to fraud are not dismissed on standing grounds;  and

- The Court **GRANTS** summary judgment to Defendant on the fraud-and-deceit claims insofar as they are brought to vindicate Plaintiff's personal injury.

- In sum, all six of Plaintiff's claims are dismissed as reasoned above.

**SO ORDERED**

Dated: April 10, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

12